IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LARRY FRANKS, TODD HEBERT,** | * | **CIVIL ACTION NO.** |
| And **CRAIG LEDET, individually** | * | |
| And on Behalf of All Other Similarly | * | |
| Situated, | * | **COLLECTIVE ACTION** |
| Plaintiffs, | * | |
| Vs. | * | |
| | * | **JUDGE** |
| **LOUISIANA FARM BUREAU, MUTUAL** | * | |
| **INSURANCE COMPANY, LOUISIANA** | * | |
| **FARM BUREAU CASUALTY INSURANCE** | * | **MAG. JUDGE** |
| **COMPANY and SOUTHERN FARM** | * | |
| **BUREAU LIFE INSURANCE COMPANY** | * | |
| And **SOUTHERN FARM BUREAU** | * | |
| **CASUALTY INSURANCE COMPANY** | * | **JURY TRIAL DEMAND** |
| | * | |
| **Defendants,** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**INDIVIDUAL AND COLLECTIVE ACTION COMPLAINT
UNDER THE FAIR LABOR STANDARDS ACT**

**NATURE OF THE ACTION**

1. Plaintiffs bring this civil action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA" or the "Act") on behalf of themselves and on behalf of all those similarly situated, to recover unpaid back wages (29 U.S.C. § 21l(a)), an additional equal amount as liquidated damages (29 U.S.C. § 216(c)), attorneys' fees and costs (29 U.S.C. § 216), and pre- and post-judgment interest.

2. Putative Class Plaintiffs are insurance agents who worked for the Defendants pursuant to contract and were misclassified as independent contractors when, in fact, they were nonexempt employees.

3. Plaintiffs bring this action on behalf of themselves and on behalf of all those similarly situated,

1

seeking to recover unpaid back wages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest.

4. This case implicates Defendants' policy of misclassifying employees as independent contractors in an effort to avoid liability under the FLSA.

5. After misclassifying employees as independent contractors, Defendants required or permitted Plaintiffs, and others similarly situated, to work as insurance agents in excess of 40 hours per week.

6. Defendants refused or failed to keep proper records of hours worked as mandated by the FLSA.

7. Defendants also refused or failed to compensate Plaintiffs, and others similarly situated, for their overtime work at the applicable overtime rate.

8. Defendants' conduct violates the FLSA which requires employers to keep proper records of hours worked and to compensate nonexempt employees for their overtime work at a rate of one and one-half times their regular rate of pay. See 29 U.S.C. § 207(a).

9. Plaintiffs, as the putative class representatives, seek certification of this suit as a class action on behalf of all current and former misclassified agents of Defendants.

**THE PARTIES**

10. **Plaintiff Larry Franks** ("Plaintiff Franks") resides at 175 Woodburn Dr., Houma Louisiana 70364. Plaintiff Franks first started working for Defendants as an insurance agent on or about August 1, 1993 and was misclassified as an independent contractor.

11. **Plaintiff Todd Hebert** ("Plaintiff Hebert") resides at 161 Lake DeCade Ct, Houma, Louisiana 70360.. Plaintiff Hebert first started working for Defendants as an insurance agent on or about October 1991 and was misclassified as an independent contractor.

12. **Plaintiff Craig Ledet** ("Plaintiff Ledet") resides at 254 Sugar Highland Blvd., Houma,

Louisiana 70360. Plaintiff Ledet first started working for Defendants as an insurance agent on or about September 1, 1997 and was misclassified as an independent contractor.

13. **Defendant Louisiana Farm Bureau Mutual Insurance Company** ("LA Farm Bureau"), is a Louisiana corporation, which maintains a presence and corporate address in Baton Rouge, Louisiana.

14. **Defendant Louisiana Farm Bureau Casualty Insurance Company** ("LA Farm Bureau Casualty"), is a Louisiana corporation, which maintains a presence and corporate address in Baton Rouge, Louisiana.

15. **Defendant Southern Farm Bureau Life Insurance Company** ("SFB Life"), is a Louisiana insurance company, which maintains a presence and corporate address in Jackson, Mississippi.

16. **Defendant Southern Farm Bureau Casualty Insurance Company** ("SFB Casualty"), is a Louisiana insurance company, which maintains a presence and corporate address in Jackson, Mississippi.

17. A true and correct copy of Plaintiff Frank's November 2006 "Agent's Contract" La Farm Bureau is attached as **Exhibit 1** and incorporated by this reference. Plaintiff Frank is informed and believes this is a standard contract required of all Defendants' Agents.

18. A true and correct copy of Plaintiff Frank's November 2006 "Agent's Contract" with LA Farm Bureau Casualty is attached as **Exhibit 2** and incorporated by this reference. Plaintiff Franks is informed and believes this is a standard contract required of all Defendants' Agents.

19. The Defendants are a unified operation and thus will be referred to as "Farm Bureau."

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C.

§ 1331 (federal question jurisdiction), 28 U.S.C. § 1337 (granting district courts original jurisdiction over civil action arising under any Act of Congress regulating commerce) and 29 U.S.C. § 216(b) (granting district court's jurisdiction over an action to recover the liability prescribed under the FSLA).

21. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this distric t.

22. Defendants were each individual and joint employers of Plaintiffs and all other similarly situated misclassified plaintiffs within the meaning of the FLSA.

**ENTERPRISE AND INDIVIDUAL FLSA COVERAGE**

23. At all relevant times, Defendants have engaged in related activities performed through unified operation or common control for a common business purpose; have employees engaged in interstate commerce or in the production of goods or services for interstate commerce, or employees handling, receiving, selling or otherwise working on goods or material that have been moved in or produced for interstate commerce; and have an annual gross volume of sales made or business done of not less than $500,000. Defendants therefore constitute an enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce within the meaning of the FLSA (29 U.S.C. §203(r) & (s)).

24. The Defendants constitute a single enterprise under 29 U.S.C. § 203(r) because it is an integrated enterprise and/or performs related activities for a common business purpose.

25. Defendants engage in activities related to selling and servicing insurance policies under the Louisiana Farm Bureau name.

26. Defendants operate subject to common management and control.

27. Defendants have a unified operation, with each of the entities working together to offer

different kinds of insurance in the Louisiana markets under a single Louisiana Farm Bureau identity.

28. Defendants are an integrated enterprise and its entities are joint employers of Plaintiffs and the similarly situated misclassified insurance agents.

29. The Farm Bureau entities, formally or as a matter of practice, jointly determine, share or allocate the ability to direct, control or supervise the Plaintiffs and other misclassified agents, by both direct and indirect means.

30. For example, Farm Bureau Agency Managers manage and supervise Farm Bureau Agents for the sale of all product lines sold by the Farm Bureau entities.  In turn, the Vice President of Sales manages and supervises the Agency Managers and is responsible for all the marketing efforts such as advertising and sales promotions for all product lines sold by the Farm Bureau entities.

31. The Farm Bureau entities, formally or as a matter of practice, jointly determine, share or allocate the power, directly or indirectly, to hire or fire the Plaintiffs and other misclassified agents or to modify the terms and conditions of employment.  For example, Plaintiffs and other misclassified agents are or were subject to employment-related agreements with Farm Bureau whereby Farm Bureau misclassified them as independent contractors.  These agreements required the Plaintiffs and other misclassified agents to follow guidelines, instructions and rules contained within the companies' rate books, compliance manuals, guidelines, and other documents, which were subject to change at Farm Bureau's sole discretion.  The same agreements reserve Farm Bureau's right to terminate the Plaintiffs and other misclassified agents at will.

32. The relationships between the Farm Bureau entities are permanent and longstanding.

33. The Farm Bureau entities operate subject to common management, supervision and control.

34. Plaintiffs and other misclassified agents' day-to-day experience was that "Louisiana Farm Bureau" was their employer. For example, supervisors and managers were considered to be working for "Louisiana Farm Bureau". They managed Plaintiffs and other misclassified agents concerning all insurance lines sold, including all Louisiana Farm Bureau lines as well as casualty and life lines sold by Louisiana Farm Bureau Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

35. Plaintiffs and other misclassified agents received pay from Louisiana Farm Bureau entities and Southern Farm Bureau entities. Facilities, computers and office supplies were supplied by Farm Bureau entities and were used for all work done by the Plaintiffs and other misclassified agents.

36. Farm Bureau issued business cards to Plaintiffs and others similarly situated with its name and logo which identified Plaintiffs and others similarly situated as insurance agents for Farm Bureau. Alternatively, Farm Bureau required Plaintiffs and others similarly situated to acquire business cards with its name and logo which identified Plaintiffs and others similarly situated as insurance agents for Farm Bureau.

37. The work of Plaintiffs and others similarly situated was/is closely and directly supervised, managed and/or controlled by other Farm Bureau employees.

38. Farm Bureau provided Plaintiffs and others similarly situated with email addresses.

39. Plaintiffs and others similarly situated were required or encouraged to use a signature that identified them as Farm Bureau agents.

40. Farm Bureau alone set the price of insurance policies sold by Plaintiffs and others similarly

situated.

41. Farm Bureau controlled the substantive content of all signage, advertising, marketing and/or promotions done on its behalf. Plaintiffs and others similarly situated who wished to advertise and/or market were required to have their advertisements and/or marketing materials approved by Farm Bureau. They were required to have their signage approved by Farm Bureau. They were also required to pay into an agent's fund for office expenses, advertising and marketing and to turn in receipts to Agency Managers.

42. Farm Bureau controlled the substantive content of all signage, advertising, marketing and/or promotions done on its behalf. Plaintiffs and others similarly situated who wished to advertise and/or market were required to have their advertisements and/or marketing materials approved by Farm Bureau. They were required to have their signage approved by Farm Bureau. They were also required to pay into an agent's fund for office expenses, advertising and marketing and to turn in receipts to Agency Managers.

43. Farm Bureau controlled the placement of policies and could remove a policy from one agent and give it to another, thereby assigning the commission from the first agent and giving it to the second. Similarly, Farm Bureau's Agency Managers held and retained the right to recode any account of any agent at any time without agent approval or authorization.

44. Farm Bureau required the Plaintiffs and others similarly situated to attend meetings and training sessions.

45. Farm Bureau's investment in infrastructure designed to underwrite, administer and pay claims of the insurance products sold by Plaintiffs and others similarly situated far exceeded any investment by the Plaintiffs and other similarly situated.

46. Farm Bureau required the Plaintiffs and others similarly situated to obtain various securities

licenses to sell Farm Bureau's variable life products and variable annuities products. The licensing required Plaintiffs and others similarly situated to pass a licensing exam to achieve these licenses. Farm Bureau required the Plaintiffs and others similarly situated to spend significant time and significant expense to study for the exams and take the exams – time for which the Plaintiffs and others similarly situated were not compensated. Sometime after obtaining the licenses required by Farm Bureau, Farm Bureau forced the Plaintiffs and others similarly situated to abandon their licenses.

47. Plaintiffs and others similarly situated worked for Farm Bureau for years and even decades.

48. Plaintiffs and other misclassified agents similarly situated frequently and routinely worked over 40 hours per week.

49. Plaintiffs and others similarly situated are and/or were nonexempt Farm Bureau employees.

50. Farm Bureau failed to make payroll tax or other withholdings from monies paid to Plaintiffs and other similarly situated insurance agents.

51. Farm Bureau illegally and/or wrongfully classified their insurance agents, including the Named Plaintiffs, as independent contractors; however, they were actually employees as that term is defined by the FSLA and relevant case law.

52. Farm Bureau controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and other similarly situated misclassified insurance agents. It prohibited Plaintiffs and other similarly situated agents from assigning any of their rights to third parties.

53. Farm Bureau set and/or closely monitored and effectively controlled the work and vacation schedules for Plaintiffs and other similarly situated misclassified insurance agents. It required its agents to submit to quarterly evaluations with Agency Managers where they were evaluated on sales performance, punctuality, appearance, community involvement, product knowledge, and

attitude.

54. Farm Bureau retained the right to discipline insurance agents for not following its company rules.

55. Farm Bureau tracked the days and time its insurance agents worked. It set and/or controlled agent work hours and/or required its agents to sign out when leaving their offices.

56. Farm Bureau instructed its insurance agents regarding when, where and how they were to perform their work. It required its agents to conduct a certain number of reviews per year.

57. Farm Bureau, the Named Plaintiffs, and others similarly situated contemplated that the employment relationship between Farm Bureau and its insurance agents would be for a long and indefinite time period.

58. Farm Bureau determined the location of the branch offices from which agents worked.

59. Farm Bureau provided the physical facilities and requirements of the work and regulates behavior in the facilities.

60. Farm Bureau customers made payments directly to Farm Bureau for purchased services and products. They did not pay Plaintiffs or others similarly situated for the services and products they offered.

61. Plaintiffs and others similarly situated were required to sign non-complete agreements.

62. Plaintiffs and others similarly situated were required to meet company quotas set by State Sales Managers, District Sales Managers, and/or Agency Managers.

63. Plaintiffs and others similarly situated were treated as "at will" employees.

64. Plaintiffs and others similarly situated were required to adhere to business ethics and codes of conduct set by Farm Bureau.

65. Plaintiffs and others similarly situated were required to taking continuing education courses on business ethics through a company-based education system.

66. Farm Bureau owned and/or maintained control of the books of business of policy holders rather than Plaintiffs and other similarly situated Farm Bureau insurance agents.  It provided agents with potential customers to contact and maintained control over all information related to clients and/or policy holders.

67. Farm Bureau set and controlled the dress code for its agents.

68. Farm Bureau required Plaintiffs and others similarly situated to attend mandated meetings (including weekly meetings, district meetings, and state meetings) and to prepare mandated production reports and business plans.

69. Farm Bureau retained the right to unilaterally fire its insurance agents without their consent, authorization or approval.

70. Farm Bureau provided and required Plaintiffs and its other agents to use the computer and software components it provided.

71. Farm Bureau dictated, monitored and/or controlled agent computer usage.  For example, it monitored website usage and retained and exercised the right to block websites at its sole discretion.  It monitored and controlled storage of information, deletions, search histories, and email correspondence.

72. Farm Bureau set imposed and required Plaintiffs and other similarly situated agents to comply with its document retention requirements.

73. Farm Bureau set and controlled production requirements for its agents.

74. Plaintiffs and other similarly situated agents were prohibited from writing property and casualty insurance across county lines without prior approval from Farm Bureau.

75. Farm Bureau discouraged its agents from incorporating.

76. Farm Bureau required Plaintiffs and other similarly situated agents to sell and collect Farm

      Bureau Federation Memberships to customers as a prerequisite to selling them insurance products and services.

77. Farm Bureau required Plaintiffs and others similarly situated to call customers and collect past due federation memberships.

78. Farm Bureau required some or all of its agents to pay payroll into an account owned by its Agency Managers.

79. Farm Bureau's Agency Managers required some or all of the Farm Bureau agents to give raises to and pay additional payroll expenses for their secretaries.

80. Farm Bureau required its agents to pay into an account for postage and paper. Each agent was required to pay the same amount regardless of the number of clients each agent had or the book of business each agent wrote.

81. Farm Bureau misclassified Plaintiffs and other similarly situated insurance agents as independent contractors to avoid the obligation to pay them pursuant to the FLSA.

82. Farm Bureau's mischaracterization of Plaintiffs and other similarly situated insurance agents as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Farm Bureau and the agents, and the attendant deprivation of substantial rights and benefits of employment, including the refusal to pay overtime wages as required by the FSLA.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF 29 U.S.C. § 207.114.

83. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

84. Farm Bureau's practice of failing to pay Plaintiffs and other agents similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA. See 29

U.S.C. § 207(a)(1).116.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to Farm Bureau or the Plaintiffs.

85. Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 207.

## COUNT II

## VIOLATION OF 29 U.S.C. § 211(c)118.

86. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

87.  Farm Bureau failed to keep adequate records of the work hours and pay of Plaintiffs and other similarly situated agents in violation of the FSLA.  See 29 U.S.C. § 211(c).

88. Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 211(c).

## **WILLFULNESS**

89. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

90. Farm Bureau's failure to pay Plaintiffs and other similarly situated agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.123.  Farm Bureau was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

91. Farm Bureau was aware of the specific job duties of its agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

92. Farm Bureau knew that the position of insurance agent as the job was intended and was performed by Plaintiffs and other similarly situated agents was consistent with an employment relationship

under the FLSA and that it was improper to classify the agents as independent contractors.

93. Farm Bureau knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated agents when it classified them as exempt independent contractors.

94. Farm Bureau willfully misclassified the positions of Plaintiffs and other similarly situated agents as exempt.

## DAMAGES AND ATTORNEY'S FEES

95. Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

96. Plaintiffs and others similar situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

97. Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

## JURY DEMAND

98. Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request the following relief on behalf of themselves, all members of the Class Action, and all other similarly situated individuals:

a. That the Court certify the putative class named in this Complaint as an opt-in class action under 29 U.S.C. § 216(b) and enter an order allowing this action to proceed as a class action under said statute;

b. That the Court declare the rights and duties of the parties consistent with the relief sought herein;

c. That the Court issue a declaratory judgment that Farm Bureau's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA;

d.  That the Court enjoin Farm Bureau from committing further violation of the FLSA;

e.  That the Court award Plaintiffs and the other putative class members overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

f.  That the Court award Plaintiffs and the other putative class members equal amounts of all owed wages as liquidated damages as allowed under the FLSA:

g.  That the Court award Plaintiffs and the other putative class members reasonable attorney's fees, costs, pre-judgment interest, post-judgment interest and expenses;

h.  That the Court award appropriate incentive awards for any class representatives;

i.  That the Court award Plaintiffs and the putative class members such additional relief as the interests of justice may require; and

j.  That a jury be impaneled to try this case.

**RESPECTFULLY SUBMITTED,**

*/s/ Lawrence J. Centola, III*
**LAWRENCE J. CENTOLA, III (27402)**
**JASON Z. LANDRY (33932)**
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:     (504) 581-9065
Facsimile:     (504) 581-7635

And

**DAMON J. BALDONE (21997)**
**Damon J. Baldone, APLC**
162 New Orleans Boulevard
Houma, Louisiana  70364
(985) 868-3427

**ATTORNEYS FOR PLAINTIF**